IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS R. CAMACHO-SANTIAGO,

**Petitioner**,

v.

UNITED STATES OF AMERICA,

**Respondent**.

**Civil No.** 18-1140 (FAB)

**OPINION AND ORDER**

Before the Court is Carlos R. Camacho-Santiago ("Camacho")'s motion to vacate the judgment against him and to allow him to consider a reinstated plea offer. (Docket No. 1.)[1] As discussed below, the Court **ORDERS** an evidentiary hearing solely on whether Camacho was prejudiced by his attorney's deficient performance.

**I. Background**

In 1993, Camacho was convicted of four crimes in Puerto Rico court. (Docket No. 1 at pp. 4-5.) For one conviction, he was sentenced to ten years of probation. Id. at p. 4. For the other three convictions, he was sentenced to two, three, and five years of probation. Id. at pp. 4-5; see Docket No. 2, Exs. 1-3. The Puerto Rico sentencing court explained that those three probation terms were to be served consecutively to the sentence for the first conviction, (Docket No. 2, Exs. 1-3), but did not indicate whether

---

[1] All docket references are to Civil No. 18-1140 unless otherwise indicated.

those three terms of probation were to be served consecutively to, or concurrently with each other.  See id.  If the three terms of probation were to be served consecutively to each other, Camacho's probation would end in 2013 (i.e., twenty years after 1993).  If they were to be served concurrently with each other, the probation would end in 2008 (i.e., fifteen years after 1993).

In 2012, Camacho was charged in federal court with two counts of drug trafficking crimes.  (Crim. No. 12-413, Docket No. 3); see also Crim. No. 12-413, Docket No. 518 at pp. 3-7 (superseding indictment).  He pled not guilty.  (Crim. No. 12-413, Docket Nos. 578, 590.)

That same year, Puerto Rico authorities began proceedings to revoke Camacho's probation because of the federal charges.  (Docket No. 2, Exs. 4-5.)  They necessarily assumed that the three terms of probation were to be served consecutively to each other and that, as a consequence, Camacho was still on probation in 2012. See id.  Camacho's lawyer, Ismael Rodríguez-Izquierdo ("Rodríguez"), argued in the revocation proceedings in the state court that the federal charges were based on inadequate evidence. Id., Exs. 6-7, 9.

The government made a plea offer in the federal case.  (Docket No. 1 at p. 2.)  According to Camacho, "[t]he plea offered [*sic*]

Civil No. 18-1140 (FAB)                                              3

tendered by the prosecution in the federal case was for ten (10) years of imprisonment." Id.

Rodríguez also represented Camacho in the federal case. Id. Camacho states that he rejected the federal plea offer on Rodríguez's advice. Id. Apparently, Rodríguez told Camacho that he was still on probation for the Puerto Rico charges and that pleading guilty to the federal charges would cause Puerto Rico to revoke his probation. Id. So, like the Puerto Rico authorities, Rodríguez necessarily believed that the three terms of probation were to be served consecutively to each other, and that Camacho was still on probation in 2012. See id. Camacho says Rodríguez counseled that the revocation would land him in prison for twenty years consecutive to any federal sentence. Id.

Camacho proceeded to trial in the federal case. In various pre-trial motions, Camacho indicated his intention to proceed to trial. See Docket No. 10 at pp. 8-9 (collecting pre-trial motions).

In 2014, a jury found Camacho guilty of the federal charges. (Crim. No. 12-413, Docket No. 1448.) At the sentencing hearing, Camacho stated that he did not agree with the jury's decision but would respect it. (Crim. No. 12-413, Docket No. 1874 at pp. 34-35.) This Court sentenced Camacho to 360 months imprisonment and entered judgment. (Crim. No. 12-413, Docket No. 1651.) The First

Circuit Court of Appeals affirmed. United States v. Camacho-Santiago, 851 F.3d 81, 83 (1st Cir. 2017).

After Camacho was convicted, the Puerto Rico court revoked his probation and sentenced him to twenty years imprisonment. (Docket No. 2, Ex. 15.) That court, like Rodríguez and the Puerto Rico authorities, must have thought that the three probation terms were to be served consecutively to each other and that Camacho was still on probation. See id.

In 2015, a Puerto Rico appellate court held that Camacho's probation ended in 2008. (Docket No. 2, Ex. 18 at p. 13.) The appellate court explained that because the 1993 sentencing court did not indicate whether the three terms of probation were to be served concurrently with, or consecutively to, each other, the law required that they be served concurrently. Id., Ex. 18 at pp. 12-13. In support, the appellate court pointed to Rule 179 of the Puerto Rico Rules of Criminal Procedure and People v. García, 165 D.P.R. 339, 344 (P.R. 2005). (Docket No. 2, Ex. 18 at pp. 12-13.) This means, of course, that pleading guilty in the federal case could not have caused Puerto Rico to revoke Camacho's probation in 2012. Id. at p. 13.

## II. The Parties' Positions

### A. Camacho

Camacho's motion boils down to the following four propositions: (1) His Puerto Rico probation ended before the federal proceedings began. (Docket No. 1 at pp. 2-3.) (2) His lawyer erred in advising him that accepting the plea in the federal case would lead Puerto Rico to revoke his probation. Id. (3) He would have accepted the federal plea but for that advice. Id. at p. 3. (4) Following the advice landed him in prison for longer than he would have been imprisoned had he accepted the plea offer. Id.

Camacho explains that Rodríguez recently admitted that his plea bargain advice was mistaken. (Docket No. 1 at pp. 3, 9, 17.) According to Camacho,

> [Rodríguez] candidly and honestly admitted to giving [Camacho] mistaken advice regarding his alleged exposure to a twenty (20) year local court revocation judgment consecutive to the ten (10) year federal sentence offered in a plea by the prosecution. [Rodríguez] also stated that his mistaken advice prevented [Camacho] from considering the federal plea offer; that this fact caused [Camacho] not to be able to evaluate the plea offered and the consequences of facing the federal trial without accepting the plea tendered by the prosecution.

Id. at p. 9.

B. **The Government**

The government argues that Rodríguez's advice was not deficient at the time it was given. (Docket No. 10 at pp. 5-7.) According to the government, the circumstances giving rise to Camacho's claim were not foreseeable at the time and are "wholly dependent on events that transpired after the representation ended." Id. at p. 5. Therefore, the government argues that Camacho leans too heavily on hindsight in implying that Rodríguez should have known that Camacho's probation had ended. Id. at pp. 5-6. The government warns, "To conclude that counsel should have known facts dependent on a later ruling by the state court of appeal, is to declare that counsel should engage in speculation of potential unforeseen circumstances." Id. at p. 7.

The government also asserts that Camacho cannot show he would have accepted the government's plea offer but for Rodríguez's advice. Id. at pp. 8-10. In support, the government points to Camacho's assertions before and during the trial regarding (i) his intention to proceed to trial, (ii) the government's alleged lack of sufficient evidence against him, and (iii) his disagreement with the jury's verdict. Id. According to the government, these assertions "unequivocally suggest that Camacho was determined to go to trial well before and after any plea offer was extended" and establish "a reasonable probability that Camacho would have

Civil No. 18-1140 (FAB)                                                7

proceeded to trial regardless of the pending state revocation." Id. at pp. 8-9.

### III. Applicable Law

In certain circumstances, a federal prisoner may attack his conviction or sentence pursuant to 28 U.S.C. § 2255. An allegation that defense counsel rendered ineffective assistance during plea bargaining may be a proper basis on which to attack a conviction or sentence. See Andrus v. Texas, 140 S. Ct. 1875, 1881 (2020); Iowa v. Tovar, 541 U.S. 77, 81 (2004); Hill v. Lockhart, 474 U.S. 52, 57 (1985).

A claim of ineffective assistance of counsel generally requires a section 2255 petitioner to satisfy a two-pronged test. A petitioner "must show that his 'counsel's representation fell below an objective standard of reasonableness' and that such deficiency prejudiced him." Feliciano-Rodríguez v. United States, 986 F.3d 30, 36 (1st Cir. 2021) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)) (emphasis supplied).

The first prong of that standard is sometimes known as the "performance prong." When evaluating whether a petitioner satisfies the performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. Courts maintain "a 'strong presumption that counsel's conduct falls within the

Civil No. 18-1140 (FAB)                                                    8

wide range of reasonable professional assistance,'" Feliciano-Rodríguez, 986 F.3d at 37 (quoting Strickland, 466 U.S. at 689), and "find an attorney's performance deficient 'only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" Id. (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). "[A] reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented." Ouber v. Guarino, 293 F.3d 19, 25 (1st Cir. 2002).

A showing that defense counsel gave incompetent advice to accept or reject a plea offer can be sufficient to satisfy the performance prong. See Lafler v. Cooper, 566 U.S. 156, 164 (2012); Turner v. Tennessee, 858 F.2d 1201, 1205 (6th Cir. 1988) (collecting cases). For example, in Lee v. United States, 137 S. Ct. 1958, 1962 (2017), "[e]veryone agree[d] that [the petitioner] received objectively unreasonable representation" when his attorney erroneously advised him that accepting a plea would not subject him to mandatory deportation. This court has held that an attorney's performance was deficient where the attorney did not communicate offers to the client, stalled negotiations, and misrepresented his client's desire to sign a plea agreement.

United States v. Miranda, 50 F. Supp. 3d 85, 90-96 (D.P.R. 2014) (Pérez-Giménez, J.).

The second prong of the ineffectiveness standard is known as the "prejudice prong".  It requires a petitioner to "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'"  Feliciano-Rodríguez, 986 F.3d at 37 (quoting Strickland, 466 U.S. at 694).  "This is a 'highly demanding and heavy burden,' meaning that '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Id. (quoting Williams v. Taylor, 529 U.S. 362, 394 (2000)).

The prejudice prong requires a particular showing where a petitioner alleges that he would have accepted a plea offer but for his counsel's advice.  In these circumstances, a petitioner

> "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under that the judgment and sentence that in fact were imposed."

Id. (quoting Lafler, 566 U.S. at 164).

A section 2255 petitioner bears the burden of establishing the need for an evidentiary hearing by a preponderance of the

Civil No. 18-1140 (FAB)                                              10

evidence. DeCologero v. United States, 802 F.3d 155, 167 (1st Cir. 2015); Myatt v. United States, 875 F.2d 8, 11 (1st Cir.1989). "Where the record, motions, and supporting documentation demonstrate there to be a genuine issue of material fact, the Court must hold an evidentiary hearing." Kiley v. United States, 260 F. Supp. 2d 248, 257 (D. Mass. 2003) (citing United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir.1978)). "An evidentiary hearing is not necessary when a § 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (alteration and internal quotation marks omitted).

In reviewing the need for an evidentiary hearing, courts "take the petitioner's credible allegations as true," DeCologero, 802 F.3d at 167 (internal quotation marks omitted), "but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets," United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." Id.

### IV. Discussion

#### A. The Performance Prong

Rodríguez's performance fell below an objective standard of reasonableness. In 2012, he could have—and a competent attorney would have—determined that Puerto Rico law required Camacho's probation to end in 2008. Instead, Rodríguez advised Camacho while operating on an assumption that the probation ended in 2013. There is no indication in the record that Rodríguez investigated when Puerto Rico law required the probation to end. There is also no indication that Rodríguez's error is the product of a tactical or strategic decision. To the contrary, Rodríguez candidly and unqualifiedly acknowledged his error. (Docket No. 1 at pp. 3, 9, 17.) And the government disputes none of those facts.

The government's argument is limited to the legal consequences of the facts in Camacho's petition. The government argues that this Court should not expect a competent attorney to have determined that Camacho's probation ended in 2008. (Docket No. 10 at pp. 5-7.) In the government's view, Camacho's petition is "wholly dependent" on the Puerto Rico appellate court's 2015 ruling. Id. at p. 5.

The government misunderstands federal law and myopically focuses on the Puerto Rico appellate court's 2015 decision. To be sure, an attorney need not possess "clairvoyance" or be "a crystal

gazer" to render performance consistent with the demands of the Sixth Amendment. State v. Williams, 695 N.W.2d 23, 30 (Iowa 2005). At the same time, however, attorneys are expected to stay abreast of developments in the law and make arguments to develop the law for the benefit of their clients. For instance, the Fifth Circuit Court of Appeals held that an attorney's performance fell below an objective standard of reasonableness where he failed to make an argument on a point of law that was not settled in that circuit but had been decided in his client's favor in other circuits. United States v. Franks, 230 F.3d 811, 814 (5th Cir. 2000).

Camacho's petition does not call on Rodríguez to have been clairvoyant or to have speculated. It does not even ask Rodríguez to have sought to develop the law. Rather, it points out that Rodríguez did not apply a settled point of law. The law applied by the Puerto Rico appellate court in 2015 was settled in 2012. See Docket No. 2, Ex. 18 at pp. 12–13 (citing García, 165 D.P.R. at 344; P.R. Rules of Crim. P. 179). Rule 179 of the Puerto Rico Rules of Criminal Procedure stated in 2012,

> When a person is convicted for a crime, the sentencing court, when issuing the sentence, must determine whether the prison term imposed must be served consecutively or concurrently with any other prison terms. If the court fails to make said determination, the prison term imposed shall be served concurrently with any others that the court imposes as part of its sentence . . . .

P.R. R. Crim. P. 179 (certified translation into the English language at Docket No. 22, Ex. 1). In García, the Supreme Court of Puerto Rico explained in 2005 that "Rule 179 . . . establishes that whenever the court fails to determine that the sentences must be served consecutively, the sentence imposed must be served concurrently with any other." 165 D.P.R. at 344 (certified translation into the English language at Docket No. 22, Ex. 2). Rodríguez, as Camacho's lawyer, could have—and should have—applied that law in 2012 just as easily as the Puerto Rico appellate court did in 2015. Accordingly, the government's opposition fails.

The Court holds that Camacho has satisfied the performance prong of the ineffective assistance of counsel standard. Strickland, 466 U.S. at 688–89; Feliciano-Rodríguez, 986 F.3d at 37. There is no need to conduct an evidentiary hearing on this issue because the government does not dispute any fact on which Camacho relies in asserting that Rodríguez's performance fell below an objective standard of reasonableness. It did.

**B.   The Prejudice Prong**

Whether Camacho would have accepted the plea offer is a disputed issue of fact. Camacho asserts that he would have accepted the plea but for Rodríguez's advice. (Docket No. 1 at p. 3.) He argues that he received "the toughest sentence in the entire indictment," and that his sentence "more than doubled the

Civil No. 18-1140 (FAB)                                             14

highest sentenced imposed by the court to other co-defendants in the case." Id. at pp. 3, 17.  The government's opposition points to instances in which Camacho (usually through his attorney) asserted either his innocence or that the government did not have sufficient evidence.  (Docket No. 10 at pp. 8-10.)

The reasoning put forward by the government has been found insufficient to deny an evidentiary hearing.  In Griffin v. United States, 330 F.3d 733, 738 (6th Cir. 2003), a defendant argued that his attorney was ineffective for not presenting him a plea offer.  The government argued that the defendant would not have accepted the plea offer.  Id.  The government relied on a plethora of instances in which the defendant asserted his innocence and his intention to proceed to trial.  Id.

The Griffin court rejected the government's argument. Id.  It pointed to the Supreme Court's observation that "reasons other than the fact that he is guilty may induce a defendant to so plead, . . . and he must be permitted to judge for himself in this respect."  Id. (quoting North Carolina v. Alford, 400 U.S. 25, 33 (1970) (quoting State v. Kaufman, 2 N.W. 275, 276 (Iowa 1879))). The Griffin court explained that, as a practical matter, it made no sense to require or expect a defendant to admit guilt before accepting a plea deal.  Id.  The Griffin court also noted that a defendant could enter an Alford plea while maintaining innocence.

Id.  And the Griffin court highlighted a Fifth Amendment right to maintain innocence.  Id.  The Griffin court ordered an evidentiary hearing on whether the defendant would have accepted the plea because (i) a substantial gap existed between the defendant's sentencing exposure and the plea offer, (ii) the defendant was unaware that co-defendants would testify against him, and (iii) the defendant did not know the government would be proposing sentencing enhancements.  Id. at 739.

In the circumstances of this case, the Court holds that Camacho has met his burden to obtain an evidentiary hearing on the prejudice prong of the ineffective assistance of counsel standard.  DeCologero, 802 F.3d at 167; Griffin, 330 F.3d at 738-40; McGill, 11 F.3d at 225; Kiley, 260 F. Supp. 2d at 257.  The gap between Camacho's sentencing exposure at trial and the plea offer, along with Camacho's unawareness that he was not subject to probation revocation by Puerto Rico authorities, are sufficient to merit a hearing.  Camacho's stated intention to go to trial and his comments at the sentencing hearing do not conclusively refute Camacho's section 2255 petition.  Moreno-Morales, 334 F.3d at 145; Griffin, 330 F.3d at 738.

One additional matter deserves attention at this stage.  The government confuses the applicable standard.  The government argues that Camacho's assertions regarding a lack of sufficient

evidence establish "a reasonable probability that Camacho would have proceeded to trial regardless of the pending state revocation." (Docket No. 10 at p. 8.)  The relevant question, however, is whether Camacho can show a reasonable probability that the plea agreement would have been presented to the Court, the Court would have accepted it, and the conviction or sentence would have been less severe than were in fact imposed. Lafler, 566 U.S. at 164; Feliciano-Rodríguez, 986 F.3d at 37.

## V. Conclusion

As discussed above, the Court **ORDERS** an evidentiary hearing on whether Camacho was prejudiced by Rodríguez's deficient performance.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, March 3, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE